**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CORBIN RASMUSSEN,                                No. C-13-4923 EMC

        Plaintiff,

        v.                                       **ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS**

APPLE INC.,                                      **(Docket No. 22)**

        Defendant.
_____/

## I.   INTRODUCTION

Plaintiff Corbin Rasmussen brings the instant action alleging that Apple's 27-inch iMac computers suffer from a defect which causes the screen to "dim" permanently, affecting the usefulness of the computer. Plaintiff asserts two causes of action on behalf of a proposed class consisting of all individuals who have purchased a 27-inch iMac – a California Legal Remedies Act claim, Cal. Civ. Code § 1750, and a California Unfair Competition Law claim, Cal. Bus. & Prof. Code § 17200, *et seq*. Plaintiff argues that Apple's advertising trumpeted the high quality nature of the screen and of the "long productive life" of Mac computers more generally while knowing that the 27-inch model of iMac suffered from a defect which made the eventual failure of the display highly likely. Plaintiff argues that this failure to disclose the defect violates both the CLRA and UCL. Apple has moved to dismiss for failure to state a claim. For the following reason, the Court **GRANTS** Apple's motion to dismiss, but with leave to amend.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff purchased a 27-inch iMac computer on August 3, 2011 for $2,259.00. Amended Complaint ("Compl.") ¶ 32 (Docket No. 19). An iMac is an "all-in-one" computer which integrates

United States District Court

For the Northern District of California

the computer's screen, processor, hard drive, and other hardware into "one machine or 'unibody enclosure.'" *Id.* ¶ 1, 11.  The iMac model at issue in this case has a "LED-Backlit display[] with a 16:9 aspect ratio." *Id.* ¶ 12.

Plaintiff asserts that he purchased the 27 inch iMac because of its "big and bold display" which he believed would be "ideal for playing HD movies and television shows" and for running his music composition program. *Id.* ¶ 31  Before he purchased the computer, he alleges that he did "extensive research" by viewing Apple's "promotional videos" touting the display and by "frequently visiting Apple's website to research the iMac and other computers" and reading "the descriptions and specifications for the 27-inch iMac" between May 2011 and August 2011. *Id.* ¶ 29, 30.  However, after approximately 18 months – in December 2012 – half of Plaintiff's iMac's screen went dim, "diminishing the useful screen size to approximately fifty-percent." *Id.* ¶ 33.  Plaintiff contacted Apple, but Apple's customer service told him that because his iMac was out of warranty, any repair to the screen would cost him more than $500 – an amount Plaintiff, as a music teacher, could not afford. *Id.* ¶ 34-35.  Consequently, his use of his iMac is severely limited given the dimmed screen. *Id.* ¶ 35.

Plaintiff alleges that when Apple launched the new iMac models with "LED-Backlit" displays, Apple's marketing and advertising focused on the display.  Specifically, Plaintiff in his complaint points to the following:

- In late 2009, Jonathan I've – Apple's Senior Vice President of Design – touted the iMac's display by noting that the iMac was "dominated by this incredible new 16:9 display . . . .  You are just completely consumed by that image. There is not a detail there that doesn't need to be there. . . . ***Everything is about the display, therefore everything is about your content***." *Id.* ¶ 13 (emphasis in original).

- In a seven-minute long video discussing the new machine, Apple stated "***The first thing you're going to be just blown away with is the display***. . . .  There is a lot more screen real estate there.  And with some [sic] many more picture elements there is just so much more that you can really do with that display [. . .] For the 27 inch we went further than 1080p, we added seventy-eight percent more pixels to take it well beyond HD.  Pixel density like this just doesn't exist in other desktop computers.  With that many pixels you are seeing great detail in photos, you're seeing razor sharp text, and of course viewing HD content with tremendous clarity." *Id.* ¶ 14 (emphasis in original).

- The video stated the "LED technology has the advantage of coming on to full brightness the moment you turn them on and it has uniform brightness across

2

the entire screen" and describes the screen as "a very premium class display technology.  What you get out of that is very good color consistency and very good display performance."  *Id.* ¶ 15.

• Apple's website advertised the iMac's "big, beautiful displays" and claimed that the screen was "instantly on and uniformly bright" and stated a "Mac is designed for a long productive life" and that Apple designers and engineers "spend countless hours ensuring that each Mac is precisely built – inside and out.  From the down-to-the-micron fit of each internal component to the finish of the enclosure."  *Id.* ¶¶ 16, 20, 21.

• Finally, in bold letters on Apple's website, Apple lauded Macs in general by stated "**It's designed to be a better computer**.  When you buy a computer, you want it to last.  And a Mac will.  That's because a Mac is designed and built to be as reliable as it is beautiful" and, thus, "only quality components and materials will do."  *Id.* ¶ 22 (emphasis in original).

Accordingly, Plaintiff alleges that Apple made "claims to superior quality and representations about the iMac's display."  *Id.* ¶ 21.

However, at the same time Apple was touting the superior qualities of the iMac's display and the Mac's dependability more generally, Plaintiff alleges Apple was aware of a latent defect with those same screens.  Specifically, Plaintiff claims that beginning in 2010, Apple began to receive so many complaints (alleged to be "several hundred or thousands") about the 27-inch iMac's display that a technology news website designated the machines "iLemons."  *Id.*  ¶¶ 24, 25.  This defect is alleged to cause the screen to dim or darken.  *Id.*  ¶¶ 2, 27.  Despite the growing number of complaints "Apple has refused to publicly acknowledge the screen dimming defect and has failed to stand behind its representations and products and offer a fix for impacted consumers."  *Id.* ¶ 27.

Plaintiff alleges that the defect in the iMac's display "may manifest itself both inside and outside of Apple's limited one-year period."  *Id.* ¶ 25.  Further, Plaintiff argues that contrary to Apple's representations regarding liability, the average person keeps their computer for three years, and would thus reasonably expect a computer to last at least three years.  *Id.* ¶ 23.

Plaintiff has asserted two causes of action – one for a violation of California's unfair competition law, Cal. Bus. & Prof. Code § 17200, *et seq.*, and one for violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*  Both claims are rooted in Plaintiff's claim that Apple's representations and advertisements regarding the 27-inch iMac's quality, build, and display were false and misleading.  Plaintiff seeks to represent a class consisting of "[a]ll

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

persons in the United States who, on or before November 30, 2012, purchased a 27-inch iMac with a LG LED-backlit display." Compl. ¶ 34.  Plaintiff seeks, on behalf of himself and the proposed class, restitutionary awards as well as an "order enjoining Apple from continuing to engage in unlawful business practices." *Id.* at 11.

## III.  DISCUSSION

Apple brings its motion pursuant to Rule 12(b)(6).  Rule 12(b)(6) allows for dismissal based on a failure to state a claim for relief. A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir.2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal,* 129 S.Ct. at 1949.

A.    Plaintiffs Have Failed to State a Claim Under the California Legal Remedies Act

The California Legal Remedies Act provides a "cause of action for 'unfair methods of competition and unfair or deceptive acts or practices' in consumer sales." *Berger v. Home Depot USA, Inc.,* — F.3d — , 2014 WL 350082, at *5 (9th Cir. Feb. 3, 2014) (quoting Cal. Civ. Code § 1770).  Section 1770 of the Civil Code provides a list of 26 prohibited activities that are deemed unfair or deceptive practices.  Included in this list are prohibitions on "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" or "[r]representing that goods . . . have . . . characteristics . . . which they do not have."  Cal. Civ. Code § 1770(a)(5), (7).  Courts analyzing such claims under the CLRA employ the "reasonable consumer" test, which requires Plaintiff to show that "members of the public

United States District Court

For the Northern District of California

are likely to be deceived by the business practice or advertising at issue." *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1132 (N.D. Cal. 2013).

Plaintiff can state a claim under the CLRA by showing that Apple either made an affirmative misrepresentation about, or failed to disclose defects in, the 27-inch iMac. *See Baba v. Hewlett-Packard Co.*, No. C09-05946 RS, 2010 WL 2486353, at *3 (N.D. Cal. June 16, 2010); *see also Elias*, 950 F. Supp. 2d at 1132, 1134. Plaintiff's opposition to Apple's motion makes explicit that Plaintiff is proceeding under a "failure to disclose" (or "omission") theory of liability. *See* Pl. Opp. at 4 (Docket No. 30). "[A] manufacturer is not liable for a fraudulent omission concerning a latent defect under the CLRA, unless the omission is 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)). Plaintiff argues he has sufficiently alleged both that Apple had a duty to disclose the latent defect in the 27-inch iMac screen and that the fact of this latent defect was "contrary to" the representations Apple made in its advertising. The Court addresses each in turn.

    1.    <u>Plaintiff Has Failed to State a Claim Under the CLRA Based on Apple Having a "Duty to Disclose" a Defect in the 27" Inch iMac</u>

California courts have generally provided that there are four circumstances in which a duty to disclose may arise:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011) (citing *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007), and *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)). A fact is deemed "material," requiring that the manufacturer disclose it if a "reasonable consumer" would deem it "important in determining how to act in the transaction at issue." *Id.* at 256; *see also O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG (CWx), 2011 WL

**United States District Court**
For the Northern District of California

3299936, at *6 (C.D. Cal. July 29, 2011) ("Materiality exists if the omitted information would cause a reasonable consumer to behave differently if he or she were aware of it.").

      a.    <u>Plaintiff Cannot State a Claim Under a "Duty to Disclose" Theory to the Extent the Alleged Defect Manifested Itself Post-Warranty</u>

Where a plaintiff predicates his CLRA claim on a manufacturer's failure to inform a customer of a latent defect which creates a likelihood of the product failing outside the warranty period, the Ninth Circuit has narrowly construed the circumstances in which such omission will be deemed "material."  In *Wilson v. Hewlett-Packard*, the Ninth Circuit – construing and applying the California Court of Appeal's decision in *Daugherty v. American Motor Co.*, 144 Cal. App. 4th 824 (2006) – held that "'[a] manufacturer's duty to consumers is *limited to its warranty obligations* absent either an affirmative misrepresentation or a safety issue.'"  *Wilson*, 668 F.3d at 1141 (quoting *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009) (emphasis added)).

In *Daugherty*, car buyers filed a putative class action against Honda, alleging that it breached its express warranties and violated the CLRA by failing to disclose an engine defect.  *Daugherty*, 144 Cal. App. 4th at 828.  It was alleged that this defect frequently would not manifest itself until long after the warranty expired.  The court noted that "although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Id.* at 835.  The plaintiffs attempted to meet this second standard, by arguing that Honda had "knowledge of 'unreasonable risk' to plaintiffs at the time of sale." *Id.* at 836.  The court found that plaintiffs' allegations were insufficient to establish that the defendant was obliged to disclose the risk.  The court found that the only "risk" plaintiffs had alleged was the "risk of 'serious potential damages' – namely, the cost of repairs in the event the defect ever causes an oil leak." *Id.* It further noted that the complaint was "devoid of factual allegations showing any instance of physical injury or any safety concerns posed by the defect." *Id.*  Accordingly, it concluded that plaintiffs had failed to state a viable non-disclosure claim under the CLRA.

Similarly, in *Wilson*, plaintiffs sued Hewlett-Packard alleging that HP had concealed a design defect within their laptop computers that both manifested after the warranty expired and

created an unreasonable safety hazard in violation of the CLRA and UCL.  Specifically, plaintiffs alleged that after approximately two years of use, their laptop would begin displaying "low power" warnings and would run on battery power even when plugged into an a/c adapter.  *Wilson*, 668 F.3d at 1138.  After reviewing the holding in *Daugherty*, the Court expressly held that "'for [an] omission to be material, the failure must [still] pose safety concerns.'" *Id.* at 1142 (quoting *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (alteration in original)).  Accordingly, because the plaintiffs' complaint failed to plead facts which plausibly alleged a causal connection between the defect and an unreasonable safety risk, the Ninth Circuit affirmed the dismissal of plaintiffs' complaint.

Accordingly, under *Wilson* (and its interpretation of *Daugherty*), where a plaintiff alleges that a manufacturer failed to inform him of a product's likelihood of failing outside the warranty period, the CLRA requires that the plaintiff allege that the asserted defect posed a safety risk – merely arguing that the defect created the risk that the plaintiff would have to pay for the repair of the product is insufficient.  *See Ford Motor Co.*, 749 F. Supp. 2d at 987 ("[W]here, as here, a plaintiff's claim is predicated on a manufacturer's failure to inform its customers of a product's likelihood of failing outside the warranty period, the risk posed by such asserted defect cannot be 'merely' the cost of the product's repair, rather, for the omission to be material, the failure must pose 'safety concerns.'" (citations omitted)).  Numerous district court decisions are in accord.  *See*, *e.g.*, *Hodges v. Apple Inc.*, No. 13-cv-01128-WHO, 2013 WL 6698762, at *7 (N.D. Cal. Dec. 19, 2013) (to state a CLRA claim under a "duty to disclose" theory, they must plead with particularly that the defendant made an "omission of a fact that defendant was obliged to disclose related to safety concerns."); *Long v. Hewlett-Packard Co.*, No. C06-02816 JW, 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007) (HP had no duty to disclose that inverter might eventually fail); *Morgan v. Harmonix Music Systems, Inc.*, No. C08-5211 BZ, 2009 WL 2031765, at *4 (N.D. Cal. July 30, 2009) (defendants are only under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use.").

United States District Court
For the Northern District of California

Courts have asserted that policy considerations support the narrowing of a manufacturer's duty to disclose in these circumstances.  Specifically, they have stated that "to broaden the duty to disclose beyond safety concerns 'would eliminate term limits on warranties, effectively making them perpetual or at least for the useful life of the product.'" *Wilson*, 668 F.3d at 1142 (quoting *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 972 (N.D. Cal. 2008)).  Consistent with this view, the district court in *Long v. Hewlett-Packard Co.*, No. C06-02816 JW, 2007 WL 2994812 (N.D. Cal. July 27, 2007) held that

> Absent a manufacturer representation as to the life span of the part in question . . . the only expectation that a purchaser could have had was that the product would function properly for the duration of the manufacturer's express warranty.  The manufacturer had no duty to disclose that, "in the fullness of time," a given part might eventually fail, necessitating repairs.

*Id.* at *8 (quoting *Daughtery*, 144 Cal. App. 4th at 838).  "Where a manufacturer has expressly warranted a product, consumers can only expect that product to function properly for the length of the manufacturer's express warranty."  *In re Sony Grand Wega KDF-E A/10/A20 Series Rear Projection HDTV Television Litigation*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010).  The purpose of the warranty, therefore, is to "contractually mark the point in time during the useful life of a product when the risk of paying for repairs shifts from the manufacturer to the consumer."  *Ford Motor Co.*, 749 F. Supp. 2d at 988.  *Cf. Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1224-25 (C.D. Cal. 2011), (CLRA claim stated where plaintiff alleged that Mercedes Benz failed to disclose defects in its vehicles that caused them to be "highly prone to water leaks and flooding" thus posing danger of catastrophic engine or electrical system failure which could occur "under any driving condition or speed, thereby contributing to traffic accidents," because Mercedes' failure to disclose the risk of water leaks and damage "could give rise to the safety concerns alleged in the complaint").

Here, it is undisputed that the alleged defect in the 27-inch iMacs does not implicate any safety issue.  Nonetheless, Plaintiff argues that Apple had a duty to disclose this defect for two reasons.  First, Plaintiff challenges the contention that California law even requires a "strict safety requirement" in omissions cases such as this one.  *See* Pl. Opp. at 11.  Plaintiff argues that "[t]he

United States District Court

For the Northern District of California

materiality analysis by the California Supreme Court, both before and after *Daugherty*, has never restricted materiality to safety considerations." *Id.* at 12.  Plaintiff cites the California Supreme Court's 2011 decision in *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011), where the Court noted that "[a] misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence." *Id.* at 892.  Plaintiff also points to the fact that the CLRA (like the UCL) is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices."  Cal. Civ. Code § 1760; *see also Cel-Tech Commc'ns v. L.A. Cellular Tel.*, 973 P.2d 527, 540 (Cal. 1999).

In addition, Plaintiff is correct that at least one federal district court has criticized the Ninth Circuit's interpretation of California law on this issue in the *Wilson* case.  In *Tait v. BSH Home Appliances*, 289 F.R.D. 466 (C.D. Cal. 2012), the court rejected *Wilson*'s discussion on the "safety" requirement as "unsupported dicta."  *Id.* at 488.  It further stated that the court was "skeptical that *Wilson* accurately interpreted California law when it held that 'California federal courts have generally interpreted . . . *Daugherty* as holding that [a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or safety issue.'"  *Id.* at 488 n.9 (quoting *Wilson*, 668 F.3d at 1141).  Stating that California courts have never required allegations that an omission relates to a "safety issue," the district court found that following *Wilson* would lead to the absurd result of a federal court plaintiff being unable to pursue a claim under the CLRA in federal court while being able to bring the same claim in state court.  *Id.* (citing *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 258 (2011)).

On the merits, the issue is certainly subject to reasonable debate.  The Court observes that the statement in *Wilson* that allowing a CLRA claim for defects appearing outside the warranty period would "eliminate term limits on warranties, effectively making them perpetual or at least for the useful life of the product," *Wilson*, 668 F.3d at 1141 (citation omitted), is an overstatement.  Unlike a warranty which is largely unconditional, a post-warranty claim under CLRA would lie only where a manufacturer *knew* of a specific defect that would make it substantially likely that a product would fail within the reasonably expected life of the product but concealed that fact from the consumer.  Moreover, permitting CLRA claims in the latter situation – even where the defect arises outside the

**United States District Court**

For the Northern District of California

1    warranty period – would be consistent with the broad consumer protection purpose of the CLRA.

2    *See* Cal. Civ. Code § 1760 ("This title shall be liberally construed and applied to promote its

3    underlying purposes, which are to protect consumers against unfair and deceptive business practices

4    and to provide efficient and economical procedures to secure such protection.").

5        However, whatever this Court may think of the strict "safety" requirement courts have

6    imposed on CLRA claims based on defects manifesting outside of a product's warranty, the Court is

7    bound by *Wilson* unless and until it is clear that *Daugherty* was wrongly decided or interpreted.  The

8    Court is not free to deviate from the Ninth Circuit's construction of California law in *Wilson* absent

9    a subsequent interpretation from California's courts that the interpretation was incorrect.  *Kona*

10   *Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 884 n.7 (9th Cir. 2000) (noting that a Ninth Circuit

11   decision on state law "remains binding in the Ninth Circuit"); *Group v. Nat'l Union Fire Ins. Co.*,

12   No. C 98-2555 CRB, 1999 WL 155697 (N.D.Cal. Mar. 16, 1999) ("[Defendant] merely argues that

13   the *Lunsford* court misapplied California law.  The Court is not aware of any authority, however,

14   that permits a district court to disregard the ruling of its circuit on the ground that the district court

15   believes the decision is incorrect.").

16       While the district court in *Tait* stated that *Wilson*'s holding can be disregarded as "dictum,"

17   the court's analysis was an alternative holding, and was equally essential to its conclusion as the

18   other cited basis.  Furthermore, a considered analysis by the Ninth Circuit, even if not absolutely

19   essential to the decision, should not be lightly disregarded.  Judge Kozinski noted in *United States v.*

20   *Johnson*, 256 F.3d 895 (9th Cir. 2001), that while "not every statement of law in every opinion is

21   binding on later panels," *id.* at 916 (Kozinski, J., concurring), there are only certain circumstances in

22   which a statement of law by the Court may subsequently be disregarded:

23           Where it is clear that a statement is made casually and without
             analysis, where the statement is uttered in passing without due
24           consideration of the alternatives, or where it is merely a prelude to
             another legal issue that commands the panel's full attention, it may be
25           appropriate to re-visit the issue in a later case. However, any such
             reconsideration should be done cautiously and rarely – only where the
26           later panel is convinced that the earlier panel did not make a deliberate
             decision to adopt the rule of law it announced.  Where, on the other
27           hand, it is clear that a majority of the panel has focused on the legal
             issue presented by the case before it and made a deliberate decision to

28

United States District Court

For the Northern District of California

> resolve the issue, that ruling becomes the law of the circuit and can only be overturned by an en banc court or by the Supreme Court.

*Id.* at 915-16 (footnote omitted). The Ninth Circuit has cited this statement with approval in subsequent binding opinions. *See, e.g.*, *In re Wal-Mart Wage & Hour Employment Practices Litig.*, 737 F.3d 1262, 1268 (9th Cir. 2013). Here, the Ninth Circuit's discussion regarding the "safety concern" limitation for fraudulent omission claims under the CLRA was neither "uttered in passing" nor made casually. Rather, its analysis and application of *Daugherty* spans two and a half pages in the Federal Reporter and its conclusion that the omission in question must relate to a safety concern was a clear basis for its affirming the district court's order. *Wilson*, 668 F.3d at 1141-43.

Moreover, Plaintiff has proffered no California case law subsequent to *Wilson* which repudiates or otherwise undermines its approach. As noted above, *Daugherty*, as interpreted by *Wilson*, remains good law. It was not, as Plaintiff contends, undermined by the Supreme Court's decision in *Kwikset*. *Kwikset* merely stated that a "'misrepresentation is judged to be material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *Kwikset*, 246 P.3d at 892 (quoting *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 977 (1997)). As its reliance on the 1997 *Engalla* decision demonstrates, *Kwikset* was not breaking new ground, but rather restating a general rule of materiality that existed in binding California Supreme Court authority before *Daugherty*. Significantly, the appellants in *Wilson* quoted both *Kwikset* and *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007), a federal district court case articulating the same standard based on earlier California Supreme Court authority, in support of their argument that materiality did not depend on a showing of a safety concern. Nonetheless, the Ninth Circuit did not hold that *Kwikset* undermined *Daugherty* and in fact expressly rejected appellants' argument that *Falk*'s reasoning eliminated the "safety concern" in cases such as these. *See Wilson*, 668 F.3d at 1142 ("Even if this Court applies the factors from *Falk* regarding materiality, as Plaintiffs suggest, for the omission to be material, the failure must [still] pose safety concerns." (citation and internal quotation marks omitted)).

United States District Court

For the Northern District of California

Plaintiffs have not demonstrated that *Kwikset* has undermined *Daugherty*'s (or *Wilson*'s) precedential force.  Rather, it is noteworthy that even after *Kwikset*, courts continue to require plaintiffs to show that the defect that the manufacturer allegedly failed to disclose implicated safety concerns in order to state a post-warranty CLRA claim.  *See, e.g.*, *Elias*, 950 F. Supp. 2d at 1135-36; *Grodzitsky v. Am. Honda Motor Co., Inc.*, No. 2:12-cv-1142-SVW-PLA, 2013 WL 2631326, at *5 (C.D. Cal. June 12, 2013); *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-cv-00288-JF(HRL), 2012 WL 1595112, at *14 (N.D. Cal. May 4, 2012).  Accordingly, the Court finds that *Wilson* is binding precedent.

> b.    Plaintiff Cannot State a CLRA Claim for a Defect Arising Within the
>        Warranty Period

Plaintiff argues that the "safety concern" requirement does not bar his CLRA claim because the defect with the 27-inch iMac display "often appears within the warranty period."  Pl. Opp. at 13.  A number of courts have noted that the "safety concern" requirement for a fraudulent omission claim under the CLRA does *not* apply where the defect in question arises during the products' warranty period.  In *Decker v. Mazda Motor of America, Inc.*, No. SACV 11-0873 AG (MLGx), 2011 WL 5101705 (C.D. Cal. Oct. 24, 2011), the district court stated:

> A proper reading of *Daugherty* reveals a two-step duty to disclose analysis.  First, a manufacturer has a duty to disclose any defects *that fall within the warranty period*, whether relating to safety or to costly repairs, that would have caused the consumer to not purchase the car if they had been disclosed.  Second, a manufacturer also has a duty to disclose safety issues that fall outside of the warranty period.

*Id.* at *4.  This is consistent with the approach adopted by other district courts.  *See, e.g.*, *Hodges v. Apple Inc.*, No. 13-cv-01128-WHO, 2013 WL 6698762, at *7 (N.D. Cal. Dec. 19, 2013) ("[A] plaintiff can state a UCL or CLRA omissions claim without alleging a such safety risk where the facts involve an undisclosed defect present from the time of manufacture of which the defendant was aware." (internal quotation marks omitted)); *Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS, 2013 WL 6477821, at *7 (C.D. Cal. Nov. 8, 2013) ("The Court does not find Defendant's case law supports the claim that a safety defect must be alleged for a duty to disclose to arise within the warranty period.").  The rationale for this distinction, as asserted by the district court in *Decker*, is

United States District Court
For the Northern District of California

that "[i]t makes logical sense that the average consumer would expect the manufacturer to disclose significant defects of any nature that arise within the warranty period. But outside of that warranty period, the average consumer would only expect the manufacturer to guarantee against unreasonable safety risks." *Id.* at *4.

Thus, in *In re NVIDIA GPU Litigation*, No. C08-04312 JW, 2009 WL 4020104 (N.D. Cal. Nov. 19, 2009), plaintiffs brought a class action alleging that NVIDIA had produced and sold defective graphics processors that were used in laptop computers. *Id.* at *2. The defective graphics processors were unable to withstand normal operations and caused display problems and system crashes. *Id.* Instead of recalling the defective GPUs, NVIDIA allegedly provided a series of inadequate remedies which hid, delayed, and (in some cases) exacerbated the problem, but did not fix the underlying issue and which caused peripheral problems with plaintiffs' laptop. *Id.* Plaintiff further alleged that the defect "caused computer failures throughout the life of the computers, which would include use within the warranty period." *Id.* at *10. The court found that plaintiff sufficiently alleged concealment of a material fact that NVIDIA had a duty to disclose. *Id*. at *10. It expressly distinguished the *Daugherty* line of cases as those cases involved defects which "manifested after the warranty period expired." *Id.*

Similarly, in *Decker*, the plaintiff alleged that Mazda had sold a number of vehicles which suffered from a defect which would cause the vehicle to have trouble starting when the engine was either cold or the clutch was misapplied. *Decker*, 2011 WL 5101705, at *1. The plaintiff's vehicle twice had to be repaired by Mazda, and Mazda refused to pay for the repairs under the vehicle's warranty. *Id.* The court found that the plaintiff had adequately stated a claim under the CLRA because she had alleged "that the defect arose both during and after the warranty period" and that it had "led to repairs during the warranty period, for which Mazda refused to pay." *Id.* at *4; *see also Jekowsky v. BMW of N. Am., LLC*, No. C13-02158 JSW, 2013 WL 6577293, at *5 (N.D. Cal. Dec. 13, 2013) (denying BMW's motion to dismiss UCL and CLRA claims because plaintiff alleged a defect which manifested within the warranty period); *Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 WL 2861160 (S.D. Cal. Feb. 13, 2012) (finding plaintiff sufficiently alleged a CLRA claim where plaintiff alleged that a "screen-bleed" and "power-

United States District Court

For the Northern District of California

1    off" defect on his phone occurred within the warranty period and failed to perform in accordance

2    with its expected characteristics).

3         Plaintiff's complaint alleges that "[c]onsumers have complained that the defect may manifest

4    itself both inside and outside of Apple's limited one-year warranty period." Compl. ¶ 25.  However,

5    although there may be a theoretical claim under the CLRA, Plaintiff alleges that the defect in *his*

6    machine did not manifest itself until 18 months after purchase – six months *after* Apple's limited

7    one-year warranty expired. *Id.* ¶ 33.  Thus, while a defect need not be safety related to support a

8    CLRA claim where the defect manifests within the warranty period, Plaintiff does not have standing

9    to assert such a claim here.  *Cf. Arevalo v. Bank of America Corp.*, 850 F. Supp. 2d 1008, 1017-18

10   (N.D. Cal. 2011) (holding that plaintiffs in a putative class action did not have standing to assert

11   claims on behalf of class members where their alleged injury differed from the class members).  He

12   did not suffer an injury which gives rise to a CLRA claim.

13        2.    Plaintiff Has Failed to Allege an Actionable Misrepresentation Under the CLRA

14        Plaintiff next argues that in fact Apple's advertising made numerous representations

15   suggesting that the iMac display is designed for a long productive life.  Pl. Opp. at 4.  Thus, Plaintiff

16   argues that the screen defect represents a material fact that is "contrary to" those representations, and

17   thus sufficient to state a claim under the CLRA.  Plaintiff also cites the related proposition,

18   recognized by this Court in the context of a general fraud claim, that a plaintiff seeking to state a

19   fraud claim on the basis of an omission need not prove a "duty to disclose" where the defendant

20   "volunteer[ed] information, in which case 'the telling of a half-truth calculated to deceive is fraud.'"

21   *Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 936 (N.D. Cal. 2012).

22        Defendants argue, however, that all of the representations identified by the Plaintiff in his

23   complaint constitute "mere puffery" and are therefore not actionable under the CLRA.  "Puffery"

24   statements cannot support a claim under the CLRA.  *See In re Sony*, 758 F. Supp. 2d at 1089.  "A

25   challenged claim is non-actionable 'puffery' if it is a '[g]eneralized, vague, and unspecified

26   assertion[] . . . upon which a reasonable consumer could not rely.'"  *Long v. Graco Children's

27   Products*, No. 13-cv-01257-WHO, 2013 WL 4655763, at *4 (N.D. Cal. Aug. 26, 2013) (quoting

28   *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139-40 (C.D. Cal. 2005)).  The Ninth Circuit

United States District Court
For the Northern District of California

has explained that "[t]he common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." *Cook Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).

As a result, advertising which "merely states in general terms that one product is superior is not actionable. However, misdescriptions of specific or absolute characteristics of a product are actionable." *Id.* (internal quotation marks omitted). Thus, a representation of fact, as opposed to mere puffery, is one which makes a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999); *see also Irving v. Lennar Corp.*, No. 2:12-CV-0290 KJM EFB, 2014 WL 68691 (E.D. Cal. Jan. 8, 2014) (same); *nSight, Inc. v. PeopleSoft, Inc.*, No. C04-3836 MMC, 2005 WL 1287553 (N.D. Cal. June 1, 2005) (same) .

The following chart provides the specific representations identified in the first amended complaint as well as examples of cases finding certain statements to be puffery, and other examples finding actionable statements:

| FAC Representations | Mere Puffery | Actionable Statements |
|---|---|---|
| iMac is "dominated by this incredible new 16:9 display. . . . Everything is about the display . . . ." Compl. ¶ 13. | (1) "ultra-reliable performance," (2) "full power and performance," (3) "versatile, reliable system," (4) "packed with power." *Elias*, 903 F. Supp. 2d at 854-55. | (1) consumers would receive "50 channels" from satellite TV; (2) on-screen program guide would allow consumer to view the television schedule "up to 7 days in advance." *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351 (2003). |
| "For the 27 inch we went further than 1080p, we added seventy-eight percent more pixels to take it well beyond HD. Pixel density like this just doesn't exist in other desktop computers. With that many pixels you are seeing great detail in photos, you're seeing razor sharp text, and of course viewing HD content with tremendous clarity." *Id.* ¶ 14. | (1) "Superb, uncompromising quality," (2) "faster, more powerful," (3) "higher performance," (4) "longer battery life," (5) "richer multimedia experience," and (6) "faster access to data." *Oestreicher*, 544 F. Supp. 2d at 973. | Stating that a computer has (1) gone through the "most stringent quality control tests" and (2) uses "brand-name components," *Anunziato*, 402 F. Supp. 2d at 1141-42. |

15

| FAC Representations | Mere Puffery | Actionable Statements |
|---|---|---|
| Stating the "LED technology has the advantage of coming on to full brightness the moment you turn them on and it has uniform brightness across the entire screen" and describes the screen as "a very premium class display technology. What you get out of that is very good color consistency and very good display performance." *Id.* ¶ 15. | (1) "High quality, reliable, and dependable," and (2) "outstanding quality, dependability, and peace of mind." *In re Toyota Motor Corp. Unintended Acceleration*, 754 F. Supp. 2d 1208, 1229 (C.D. Cal. 2010). | Stating that a lamp has "35,000 candle power and 10-hour life." *Cook, Perkiss & Liehe*, 911 F.2d at 246 (citing *Smith-Victor*, 242 F. Supp. at 308). |
| Website advertised the iMac's "big, beautiful displays" and claimed that the screen was "instantly on and uniformly bright" *Id.* ¶ 16. | (1) "Crystal clear" or (2) "CD quality" sound or reception." *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003). | Saying that Maytag uses "commercial grade components." *Apodaca*, 2013 WL 6477821, at *6. |
| Website generally advertised that Mac is designed for a long productive life" and that Apple designers and engineers "spend countless hours ensuring that each Mac is precisely built – inside and out. From the down-to-the-micron fit of each internal component to the finish of the enclosure." *Id.* ¶ 20, 21. | "We are sure that you'll be pleased with the outstanding quality, reliability, and performance of your new notebook. Each and every eMachines notebook uses the latest technology . . . ." *Anunziato*, 402 F. Supp. 2d at 1141. | Describing a food product as "wholesome" where the product had allegedly dangerous additives. *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010). |
| Website advertised "**It's designed to be a better computer**. When you buy a computer, you want it to last. And a Mac will. That's because a Mac is designed and built to be as reliable as it is beautiful" and, thus, "only quality components and materials will do." *Id.* ¶ 22(emphasis in original). | Stating lamps were "far brighter than any lamp ever before offered for home movies." *Cook, Perkiss*, 911 F.2d at 246 (citing *Smith-Victor Corp. v. Sylvania Elec. Prods., Inc.*, 242 F. Supp. 302, 308 (N.D. Ill. 1965)). | |

**United States District Court**
For the Northern District of California

| FAC Representations | Mere Puffery | Actionable Statements |
|---|---|---|
| | Stating that an Apple laptop is (1) mobile; (2) durable; (3) portable; (4) rugged; (5) "built to withstand reasonable shock"; (6) "reliable," (7) "high performance," (8) "high value," (9) affordable choice" or (10) an "ideal student laptop." *Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012). | |
| | (1) "Maytag.  The Dependability People," (2) "Maytag . . . the sign of dependable washers and dryers," (3) "Maytag washers and dryers are built to last," (4) The Maytag steam dishwasher; built strong to last; (5) Maytag as "synonymous with dependability" with an "unequaled tradition of quality production and unrivaled performance," (6)"exceptionally durable," (7) Maytag "delivers products that are built to last" *Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS, 2013 WL 6477821, at *5 (C.D. Cal. Nov. 8, 2013). | |
| | Representation that an Apple laptop has "the world's most advanced notebook display" and has the "most advanced" technology. *Hodges*, 2013 WL 4393545, at *3-4. | |
| | Representation that an apple laptop represents a "huge leap[] in performance" that makes work go "smoother and faster" with "dramatic speed and incredible overall performance." *Tomek v. Apple, Inc.*, No. 2:11-cv-02700, 2013 WL 3872774 (E.D. Cal. July 25, 2013). | |

United States District Court

For the Northern District of California

In light of this precedent, it is apparent that the relevant alleged representations contained in the complaint constitute inactionable puffery.  First, many statements do not relate to the longevity of the screen's performance, only to the general quality of its display.  As to those that do, statements that the Mac is designed to "last" or to have a "long productive life" are equivalent to representations that a product was "built to last" that courts have found to be non-actionable.  *See, e.g*, *Apodaca,* 2013 WL 6477821, at *5.  Similarly, representations that the screen was a "very premium class," that macs are "precisely built," and that the machines use only "quality components and materials" are indistinguishable from those cases which have held that representations that a product was "superb, uncompromising quality," "outstanding quality," or "high quality," constituted puffery.  *See Elias*, 903 F. Supp. 2d at 854-55*; Anunziato*, 402 F. Supp. 2d at 1141; *In re Toyota*, 754 F. Supp. 2d at 1229.  Plaintiff has simply not alleged that Apple made any misrepresentations about specific or absolute characteristics of the longevity of the 27-inch iMac that would constitute an actionable statement.  *Compare Cook, Perkiss & Liehe*, 911 F.2d at 246 (35,000 candle power and 10 hour life lamp); *Anunziato*, 402 F. Supp. 2d at 1141-42 (product uses "brand name components" and was subject to "stringent quality control"); *Apodaca*, 2013 WL 6477821, at *6 (product uses "commercial grade" products).  Because none of the alleged representations are "capable of being proved false or of being reasonably interpreted as a statement of objective fact," Plaintiff has not alleged that Apple made any actionable statement for purposes of the CLRA. *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)

     3.   <u>Summary</u>

For the foregoing reasons, Plaintiff has failed to adequately allege either that (1) his 27-inch iMac had a defect which Apple had a duty to disclose or (2) that the alleged defect was "contrary to" any actionable representation actually made by Apple.  Accordingly, the Court **DISMISSES** Plaintiff's CLRA claim, with leave to amend.

B.   <u>Plaintiff's UCL Claim Fails for the Same Reasons as His CLRA Claim</u>

The California Unfair Competition Law generally provides "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  "The standard for determining whether a defendant misrepresented the characteristics, uses or benefits of goods and services under Civil

United States District Court

For the Northern District of California

1  Code section 1770, subdivision (a)(5) is the same as that for determining whether there was false

2  advertising under the UCL and the false advertising law." *Chapman v. Skype Inc.*, 220 Cal. App. 4th

3  217, 230 (2013); *see also Elias*, 950 F. Supp. 2d at 1135-36 (applying same standard for "omission"

4  claims under the UCL and CLRA).  Plaintiff has provided no independent argument as to why their

5  UCL claims should not be dismissed.  Accordingly, the Court **DISMISSES** Plaintiff's UCL claim

6  with leave to amend.

7  C.  <u>Plaintiff Has Adequately Plead Reliance</u>

8     Apple also argues that Plaintiff has failed to state a claim because he has not asserted which

9  alleged misrepresentation he allegedly saw and upon which he relied.  Apple argues that the

10  amended complaint merely states general advertising that *others* saw, but that Plaintiff never

11  expressly states which alleged misrepresentations upon which *he* relied.  The Court disagrees.

12     Apple is correct that both the CLRA and UCL require plaintiffs to prove reliance.  *See, e.g.*,

13  *Cholakyan*, 796 F. Supp. 2d at 1228; *Hodges*, 2013 WL 6698762, at *3.  Further, because Plaintiff's

14  UCL and CLRA claims both allege fraudulent conduct on the part of Apple, he must satisfy the

15  heightened pleading standard of Rule 9(b).  *See, e.g.*, *Rahman v. Mott's LLP*, No. CV 13-3482 SI,

16  2014 WL 325241, at *8 (N.D. Cal. Jan. 29, 2014) ("The Ninth Circuit has specifically held that Rule

17  9(b)'s heightened pleading standard applies to claims for violation of the UCL, FAL, or CLRA that

18  are grounded in fraud.").  Accordingly, a number of courts have required plaintiffs under the CLRA

19  and UCL to affirmatively state which advertisement or commercial containing a misrepresentation

20  plaintiff relied upon in order to adequately plead reliance under Rule 9.  *See, e.g.*, *Kearns v. Ford*

21  *Motor Co.*, 567 F.3d 1120, 1226 (9th Cir. 2009) ("Nowhere in the TAC does Kearns specify what

22  the television advertisements or other sales material specifically stated.  Nor did Kearns specify

23  when he was exposed to them or which ones he found material. . . . Accordingly, these pleadings do

24  not satisfy the requirement of Rule 9(b)."); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW,

25  2013 WL 3829653, at *12-13 (N.D. Cal. July 23, 2013) (dismissing UCL and CLRA claims with

26  leave to amend for plaintiff to "allege with specificity which commercials or other misleading

27  advertisements they each relied upon in purchasing their devices").

28

United States District Court

For the Northern District of California

1  Plaintiff argues in his opposition that he is not needed to allege the particular advertisements

2  or representations to which he was exposed, relying primarily on *Oreck Corp. Halo Vacuum & Air*

3  *Purifiers Mktg. & Sales Practices Litig.*, No. ML 12-2317 CAS, 2012 WL 6062047 (C.D. Cal. Dec.

4  3, 2012). In that case, the district court found that the plaintiffs had alleged that they

> were exposed to a national advertising campaign that utilized several
> slightly different advertisements all articulating a common allegedly
> fraudulent message: that the Oreck products used scientifically proven
> technology to effectively kill pathogens and reduce the risk of illness.
> The FACC also explains which type of advertising (infomercial,
> online, etc.) each plaintiff . . . viewed. This is sufficient to satisfy
> Rule 9(b).

9  *Id.* at *15. The court went on to note that it would be "unfair to require plaintiffs to recall and

10  specify precisely which of the many advertisements they . . . saw [and] relied upon." *Id.* Rather, it

11  "suffices for plaintiffs to provide examples of advertisements similar to those they saw as long as all

12  the advertisements convey the core allegedly fraudulent message." *Id.*

13  The Court finds the analysis in *Oreck* persuasive and concludes that Plaintiff has sufficiently

14  alleged reliance. In the amended complaint, the Plaintiff alleges that he "viewed promotional videos

15  touting the iMac's display and build quality" and that from approximately May 2011 through early

16  August 2011, he "frequently visited Apple's website to research the iMac and other computers. Mr.

17  Rasmussen did most of his research on Apple's website, reading the descriptions and specifications

18  for the 27-inch iMac on the Apple iMac webpage." Compl. ¶¶ 29-30. He also, as recounted above,

19  provides specific statements from Apple's website and promotional videos. The Ninth Circuit has

20  noted that even under the heightened pleading standard of Rule 9(b), the ultimate question is

21  whether the allegations of fraud are "specific enough to give defendants notice of the particular

22  misconduct which is alleged to constitute the fraud they charged so that they can defend against the

23  charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d

24  1014, 1019 (9th Cir. 2001) (citation and internal quotation marks omitted.). While Plaintiff has not

25  expressly alleged the *precise* statements or advertisements upon which he has relied, he has alleged

26  sufficient information about the information on which he relied, as well as examples of similar

27  specific statements from the same sources, to give Apple notice of the nature of the alleged

28  misrepresentations at issue.

United States District Court

For the Northern District of California

D.      The Court Need Not Decide if Plaintiff Has Standing for Injunctive Relief

Apple argues that because Plaintiff cannot assert a claim for injunctive relief because he has not, and cannot, allege that he is "realistically threatened by a repetition" of the purported violation.

Under Article III, "to establish standing to pursue injunctive relief . . . [plaintiffs] must demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citation omitted). "A determination that a plaintiff has standing to seek damages does not ensure that the plaintiff can also seek injunctive or declaratory relief." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001). On the basis of this principle, courts have dismissed injunctive relief claims under both the UCL and CLRA claim, finding no realistic threat that the consumer would suffer from the alleged injury in the future. *See, e.g.*, *Mason v. Nature's Innovation, Inc.*, No. 12cv3019 BTM(DHB), 2013 WL 1969957, at *5 (S.D. Cal. May 13, 2013) (dismissing injunctive claim because it is "apparent that Plaintiff has no intention of buying Defendant's skin tag removal product again in the future"); *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 927 (N.D. Cal. 2012) (dismissing injunctive relief claims because the allegations established only that the defendant "will (allegedly) harm many people, but not necessarily that it will harm *Plaintiffs* again"); *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011) (finding plaintiff had not shown that he faces any future harm because "if [plaintiff] paid an inflated price for the product based on OCZ's alleged misrepresentations, he is no danger of doing so again").

Some courts have disagreed with this reasoning, correctly recognizing the limitation this places on federal courts to enforce California's consumer laws. For example, in *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012), Judge Illston declined defendant's motion to dismiss plaintiff's injunctive relief claims, noting:

> "If the Court were to construe Article III standing as narrowly as Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter . . .and would never have Article III standing. . . . While Plaintiffs may not purchase the same Gruma products as they purchased during the class period, because they are now aware of the true content of the products, to prevent them from

bringing suit would surely thwart the objective of California's
consumer protection laws."

*Id.* at *6 (quoting *Henderson v. Gruma Corp.*, No. 10-04173 AHM (AJWx), 2011 WL 1362188, at *7-8 (C.D. Cal. Apr. 11, 2011)). Judge Illston correctly observed that this reading of Article III effectively eliminates injunctive relief in consumer cases brought in federal court, and would undermine the objectives of both the CLRA and UCL.

However, as Plaintiff will be given leave to amend, the Court need not reach the question of standing. Plaintiff may choose to stand on his pleadings or amend to add allegations or additional plaintiffs.

E.     The Complaint's Class Definition Is Overbroad

Apple has moved to strike the class definition on the ground that it includes in the class members who never experienced any defects with their iMac. Apple is correct – the definition is overbroad as it includes within the class individuals who have not experienced any issue or defect with their 27-inch iMac  *See, e.g.*, *Hovsepian v. Apple, Inc.*, No. 08-5788 JF(PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ("First, the class is not ascertainable because it includes members who have not experienced any problems with their iMac display screens.")

## IV.   CONCLUSION

For the foregoing reasons, Apple's motion to dismiss  is **GRANTED**.  However, Plaintiff will be given leave to amend consistent with this order.  Plaintiff shall file any amended complaint within 30 days of this order.

This order disposes of Docket No. 22.


IT IS SO ORDERED.


Dated: March 14, 2014

_____
EDWARD M. CHEN
United States District Judge